OPINION
Appellant Melinda Poletsky-Mingle (hereinafter "mother") appeals the February 16, 1999 Judgment Entry entered by the Stark County Court of Common Pleas, Family Court Division, terminating her parental rights and granting permanent custody of mother's minor children to appellee Stark County Department of Human Services (hereinafter "SCDHS").
 STATEMENT OF THE FACTS AND CASE
On November 4, 1996, SCDHS filed a complaint in the Stark County Court of Common Pleas, Family Court Division, alleging Cheyenne Poletsky (DOB 2/21/95) was dependent and/or neglected and/or abused child. On November 1, 1996, SCDHS assumed custody of Cheyenne, pursuant to Juv. R. 6, due to the child's having unexplained bruises on her right eye and right leg. Additionally, the child was living in deplorable conditions and mother was residing with one Duane Mingle, who has a history with SCDHS and a history of domestic violence. Via Judgment Entry dated November 4, 1996, the trial court placed Cheyenne under emergency shelter care custody. On November 6, 1996, the trial court ordered temporary custody of the child to SCDHS; ordered mother to obtain a psychological evaluation; and ordered Duane Mingle to have no contact with Cheyenne. SCDHS filed a case plan on November 27, 1996. The case plan required mother to obtain a psychological evaluation, follow through with all recommended counseling, maintain her sobriety, attend Goodwill parenting classes and anger management counseling, and maintain a safe home environment for Cheyenne. The trial court made a finding of dependency on February 4, 1997. On March 22, 1997, mother gave birth to Dakota Poletsky-Mingle. SCDHS filed a complaint on March 25, 1997, alleging Dakota to be a dependent child based upon mother and Duane Mingle's lack of progress in their case plans relative to Cheyenne as well as their general history with SCDHS. Via Judgment Entry dated March 25, 1997, the trial court placed Dakota under emergency shelter care custody. After the shelter care hearing on March 26, 1997, the trial court placed Dakota in the temporary custody of SCDHS. The trial court ordered paternity be established and ordered Duane Mingle to undergo a psychological evaluation. SCDHS filed a case plan relative to Dakota on April 2, 1997, which mirrored the case plan in Cheyenne's case. Via Judgment Entry filed June 16, 1997, the trial court found Dakota to be a dependent child. On July 27, 1998, SCDHS filed motions for permanent custody of Cheyenne and Dakota. The complaints were based upon mother's failure, despite the availability of extensive services, to remedy the conditions which caused the removal of the children from her home. Mother failed to complete her case plan. Additionally, mother and Duane Mingle have failed to maintain a stable and clean home. The trial court conducted a trial on the motions on November 23, 1998, and January 29, 1999. At trial, Sally David, a counseling intern with Catholic Community Services, testified she and her supervisor, Marilyn Kimbrel, briefly worked with mother. Although mother's case plan required she attend a boundaries group to address relationship issues, mother only attended one time during the sixteen week session. Mother was eventually terminated from the program. Mother subsequently scheduled an appointment to see Marilyn Kimbrel, but did not appear for the appointment. Mother later called the agency and requested counseling services. In April, 1998, mother began counseling with Sally David. Although mother was scheduled for one hour appointments on a weekly basis, she only appeared for about fifty percent of her appointments. As of November, 1998, mother had failed to complete or substantially comply with her counseling goals. Dr. Gerald Bello, a psychologist with Human Development and Counseling Associates, testified he conducted a psychological evaluation of mother in 1997. As part of the evaluation, Dr. Bello conducted standardized personality tests and a structured clinical interview. Based upon the results of the personality tests, Dr. Bello determined mother to be in the borderline to low average range of intelligence. The doctor explained people with this range of intelligence tended to be more reactive than proactive in their problem solving, and lacked abstract reasoning and long range processing ability. The tests also revealed mother was deficient in social comprehension and social awareness, which could cause her to be unable to judge appropriate reactions to social situations. Dr. Bello further testified mother showed elevations in depressive symptomology, anxiety, and impulsivity. Dr. Bello explained mother's depressive personality profile with underlying hostility indicates mother is likely to act out on her emotions and to demonstrate a low frustration tolerance. Dr. Bello recommended treatment in the form of medication and therapy. The doctor suggested reunification could start after one year if mother complied with his recommendations. Linda Temsic, a parenting instructor with Goodwill Industries, testified mother began parenting classes in March, 1997. Due to mother's excessive, unexcused absences, Temsic required mother to sign a behavioral contract. Temsic testified, at the time of this class session, mother was living with Duane Mingle in a male friend's home. Family and friends were helping the two purchase basic necessities, such as food and clothing. Mother reported to Temsic a long history of her own abuse and her difficulty with relationships. Mother also told Temsic her mother constantly screamed at her when she was a child, a behavior mother found herself repeating with her own children. Regarding mother's visits with Cheyenne and Dakota, Temsic testified mother admitted to having difficulty keeping up with Cheyenne. Temsic was unable to opine whether mother and the children were bonding due to the length of the visits. Mother completed all of her goals, however, she only received a certificate of participation because Goodwill had reservations about whether mother would be able to implement what she learned in class. At SCDHS's recommendation and based upon Goodwill's belief mother did not gain a sufficient amount of knowledge through her first involvement with the parenting classes, mother participated in a second session between April, 1998, and July, 1998. Mother also had a problem with attendance and signed a behavioral contract during this involvement. During the second class session, mother lived in a residence different from where she resided during the first session. Temsic's home study revealed the residence was inappropriate for the children. Temsic noted mother's ability to handle Cheyenne and Dakota had deteriorated during the second class session. In class, Temsic found mother to be less involved and more defensive. Temsic testified she believed mother was not ready to make a long term commitment towards parenting Cheyenne and Dakota or toward having the children returned to her home. Norma Thorp, an on-going family service worker with SCDHS, testified regarding her involvement with the family. Thorp stated mother had participated in two Goodwill parenting class sessions and attended sobriety support groups. Thorp noted, although mother completed her psychological evaluation, she failed to follow through with the recommended counseling. Further, mother failed to maintain or reside in appropriate housing for the children. Throughout Thorp's involvement with mother, mother was employed in a number of different jobs, but never maintained employment for a substantial amount of time. Thorp opined the children could not be unified with mother. During her testimony, mother admitted she had lived at a number of different residences over the last two years. Mother acknowledged Cheyenne had been removed from her custody when she was homeless. Mother, who turned twenty-one on the first day of the hearing, stated she had held four jobs since her eighteenth birthday, but had not stayed in any position longer than a year. Mother conceded, although she received a copy of the Goodwill report after she completed her first session of parenting classes, she did not read the report to determine what areas needed improvement. Via Findings of Fact and Conclusions of Law dated December 21, 1998, the trial court found Cheyenne and Dakota could not be placed with mother in the forceable future nor should the children be placed with mother. The trial court further found mother had failed to continually and repeatedly for a period six months to substantially remedy the conditions causing the children to be removed from her home and had demonstrated a lack of commitment toward the children. The trial court conducted a best interest hearing on January 29, 1999. At the best interest hearing, Norma Thorp testified she is the SCDHS worker assigned to Cheyenne and Dakota's case. Thorp noted Cheyenne was born on February 21, 1995, and Dakota was born on March 22, 1997. She stated both girls were Caucasian and healthy. Thorp acknowledged Cheyenne was slightly delayed in her verbal abilities. The girls are placed together with foster parents who would like to adopt them. Thorp testified the siblings were bonded to one anther and Cheyenne exhibited some bonding with mother. Thorp recommended permanent custody be awarded to SCDHS. Via Judgment Entry dated February 16, 1999, the trial court found it was in the best interest of the Dakota and Cheyenne to terminate mother's parental rights and grant permanent custody of the children to SCDHS. In a second Judgment Entry filed February 16, 1999, the trial court incorporated its December 21, 1998 Findings of Fact and Conclusions of Law and granted permanent custody of Dakota and Cheyenne to SCDHS and divested mother of any and all parental rights, privileges, and obligations. It is from these judgment entries mother appeals raising the following assignments of error:
 I. THE JUDGEMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I II
In her first and second assignments of error, mother raises manifest weight and sufficiency of the evidence claims relative to the trial court's granting permanent custody to SCDHS and finding it was in Cheyenne and Dakota's best interests to do so. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279. The relevant statute is R.C. 2151.414, which provides, in pertinent part:
(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
* * *
In determining the best interest of a child, R.C. 2151.414(D) states:
(D). . . the court shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
We find the trial court's finding it was in Cheyenne and Dakota's best interests to grant SCDHS's motions for permanent custody is not against the manifest weight of the evidence. Norma Thorp testified Dakota and Cheyenne are living in foster care with a half sibling and the foster family is interested in adopting all three children. Thorp observed bonding between the foster family and the girls. Thorp acknowledged the bonding between Cheyenne and mother, and noted the strong bond between Cheyenne and Dakota. The record reflects Dakota and Cheyenne are caucasian females with no known permanent behavioral or developmental disabilities. Dakota was diagnosed with asthma and uses a breathing machine on occasion. Cheyenne receives speech therapy for a minor speech problem. At preschool, Cheyenne was diagnosed as having special needs and receives a special needs curriculum as part of each school day. However, a best interest determination is not sufficient to grant permanent custody of a child to an agency and divest parents of their parental rights. In the instant case, the trial court further found, pursuant to R.C. 2151.414(B) (1), Cheyenne and Dakota were not abandoned or orphaned and could not be placed with mother within a reasonable time or should not be placed with mother. The record reveals, although SCDHS worked with mother for over two years, mother failed to substantially remedy the problems leading to the removal of the children from her home. Despite her understanding of the need to do so, mother failed to follow through with the counseling recommendations of Dr. Bello. Mother and Duane Mingle lived in six different residences during the pendency of the case. None of these residences were appropriate for the children. Mother participated in two sessions of Goodwill parenting classes, however, she failed to internalize what she had been taught and became overwhelmed during visits with the children. Based upon the foregoing, we find the trial court's finding it was in Cheyenne and Dakota's best interests to grant permanent custody to SCDHS and finding the children could not be placed with mother within a reasonable period or should not be placed with mother are not against the manifest weight or the sufficiency of the evidence. Mother's first and second assignments of error are overruled.
The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.
By: Hoffman, J. Wise, P.J. and Farmer, J. concur